**Sheryl Lynn HENDERSON, Relator,**

v.

**The Hon. Jerry SHACKELFORD, Judge and James Dunlap, Respondents.**

**No. 07–84–0002–CV.**

Court of Appeals of Texas, Amarillo.

May 14, 1984.

**688**

West Texas Legal Services, Samuel T. Jackson, Amarillo, for relator.

Seldon Hale, Amarillo, for respondents.

Before DODSON, COUNTISS and BOYD, JJ.

DODSON, Justice.

Sheryl Lynn Henderson has filed an application for a writ of mandamus requesting this Court to direct the Honorable Jerry Shackelford, Judge of the 320th Judicial District Court of Potter County, Texas, to vacate his order dated 17 October 1983 appointing James Lyle Dunlap as the temporary managing conservator of the child in question and to command the trial judge to compel Dunlap to deliver possession of the child to Henderson. Concluding that Henderson has failed to establish that she is entitled to the relief sought in this Court, we deny the writ.

The record shows that Henderson and Dunlap were divorced on 3 October 1977 by a decree rendered by the Superior Court of California in the County of Los Angeles. The California court had personal jurisdiction over the parties. By the California court's decree, Henderson was appointed custodian of the parties' minor child, and

Dunlap was granted reasonable visitation rights with the child. After the divorce, Henderson moved to the State of Colorado with the child. In June, 1982, Dunlap, at Henderson's request, took possession of the child and brought her to Amarillo, Texas, to live with him at his residence in that city.

On 10 March 1983 (approximately eight months after he brought the child to Amarillo to live with him), Dunlap filed an action in the 320th District Court of Potter County, Texas, requesting appointment as managing conservator of the child. On 2 July 1983, Henderson filed a petition for a writ of habeas corpus in the 320th District Court of Potter County, Texas, to obtain possession of the child. After a hearing on 2 August 1983, the court rendered judgment on 12 August 1983, denying Henderson's petition for a writ of habeas corpus.

On or about 18 August 1983, Dunlap made application for temporary orders in his action for appointment as managing conservator of the child. After a hearing on 3 October 1983, the court signed an order dated 17 October 1983 appointing Dunlap temporary managing conservator of the parties' minor child. The record further shows that on 13 October 1983, the court denied Henderson's second petition for a writ of habeas corpus for possession of the child.

■ In support of her petition for a writ of mandamus in this Court, Henderson maintains that the trial court erred in denying her petitions for writs of habeas corpus in the absence of finding a "serious and immediate question concerning the welfare of the child" under the facts in this action. We disagree.

Section 14.10 of the Texas Family Code (Vernon Pamp. 1984) provides in pertinent part as follows:

Sec. 14.10. Habeas Corpus

(a) If the right to possession of a child is presently governed by a court order, the court in a habeas corpus proceeding involving the right to possession of the child shall compel return of the child to

the relator if and only if it finds that the relator is presently entitled to possession by virtue of the court order.

(b) The court shall disregard any cross action or *motion pending for modification of the decree* determining managing conservatorship, possession, or support of or access to the child *unless it finds that:*

(1) the previous order was granted by a court that did not give the contestants reasonable notice of the proceeding and an opportunity to be heard;. or

(2) *the child has not been in the relator's possession and control for at least 6 months immediately preceding the filing of the petition for the writ.*

(c) The court may issue any appropriate temporary order if there is a serious immediate question concerning the welfare of the child.

(d) While in this state for the sole purpose of compelling the return of a child through a habeas corpus proceeding, the relator is not amenable to civil process and is not subject to the jurisdiction of any civil court except the court in which the writ is pending and in that court only for the purpose of prosecuting the writ. (Emphasis added.)

Section 14.10(a) states the general provision that the court shall compel the return of the child to the relator if and only if it finds that the relator is presently entitled to possession of the child by virtue of a prior court order. However, sections 14.-10(b)(1), 14.10(b)(2) and 14.10(c) state exceptions to that provision. *See Strobel v. Thurman,* 565 S.W.2d 238, 239 (Tex.1978); *Rankin v. Gray,* 584 S.W.2d 539, 542 (Tex. Civ.App.—Waco 1979), *rev'd on other grounds,* 594 S.W.2d 409 (Tex.1980). In this instance, the evidence conclusively shows that the child had been in Dunlap's possession and control for a period of more than six months immediately preceding the filing of Henderson's petition for the writ of habeas corpus. Consequently, the trial court's action in denying Henderson's peti-

tions for the writs of habeas corpus is authorized by the exception stated in section 14.10(b)(2). The court, therefore, was not required to make a further finding under section 14.10(c). Thus, Henderson's above-stated contention is overruled.

■ Henderson further contends that the trial court erred by appointing Dunlap as temporary managing conservator of the child without finding a serious and immediate question concerning the welfare of the child. In support of her position, Henderson relies on *Whatley v. Bacon,* 649 S.W.2d 297 (Tex.1983) and *McElreath v. Stewart,* 545 S.W.2d 955 (Tex.1977). In this instance, the court's determinations in *Whatley* and *McElreath* are not controlling.

In *Whatley,* the court determined, among other things, that the trial court erroneously rendered certain temporary orders affecting possession of the Whatley children because the court's jurisdiction to act on those matters had not been properly invoked. In *McElreath,* the court determined that the trial court erred in expanding the scope of a habeas corpus hearing to include matters which did not concern the immediate welfare of the child as provided in section 14.10 of the Texas Family Code and that the evidence was insufficient to establish that there was a serious immediate question concerning the welfare of the child as required by section 14.10(c) of the Texas Family Code.

In this instance the record shows that on 10 March 1983, Dunlap filed his action in the 320th District Court of Potter County, Texas, requesting appointment as managing conservator of the child. At that time, the child had lived with him at Amarillo, Texas, for more than six months. He had taken possession and control of the child at Henderson's request. On or about 18 August 1983, Dunlap made application for temporary orders in his action for appointment as managing conservator of the child. The court heard that matter on 3 October 1983. The record shows that at that hearing, Henderson and Dunlap were properly before the court with their respective attorneys of record.

Dunlap's action for appointment as managing conservator is brought under section 14.08 of the Texas Family Code. His application for temporary orders is brought under section 11.11 of that code. Section 14.08(g) provides that:

While a motion to modify or a petition for further action is pending, *the court may not issue temporary orders* under Section 11.11 of this code that have the effect of changing the designation of the managing conservator *unless the order is necessary because there is a serious, immediate question concerning the welfare of the child.* (Emphasis added.)

At the conclusion of the hearing on Dunlap's application for temporary orders, the court stated, "Based upon the evidence, I will enter the finding required by 14.08 of the Family Code and will appoint the father as the temporary managing conservator."

In this instance, the record shows that there was a serious immediate question concerning the welfare of the child. In that regard, the record shows that the child spent the summer of 1982 with her father. At the end of the summer, the mother told the father that it would be all right for the child to remain in Amarillo and go to school. In the previous year her achievement progress was poor, and on at least two occasions the child had been taken out of school for several weeks to accompany her mother on trips to Florida and California. The child's school work was adversely affected by her frequent absences from school.

In August of 1982, the child was placed in school in Amarillo. She was in the second grade. In the early part of the school year the child was failing. She passed to third grade with much help from the father and his wife. At the time of the hearing, the child was in school in Amarillo and doing well.

The record further shows that when the mother had the child with her, she habitually left the child with her husband or a relative under the pretense of being away for a couple of hours; however, she would be gone for two or three days "partying."

On one of those occasions the child was with a relative and saw her mother. The child wanted to go with her mother. The mother told the child to "get the f_____ away from [me], ... I got other things to do." After that incident the child was very upset emotionally. The relative testified that it took a couple of hours for her to calm the child.

When with her mother, the child's educational progress and emotional stability were less than satisfactory. At the time of the hearing on 3 October 1983, the child had been with the father for approximately sixteen months. The child was in school and doing well. The record further shows that at the time of hearing, the mother's husband had no permanent job and was not temporarily employed. The mother was on welfare in the State of Colorado. Her only employment, which she denied at the first hearing but admitted at the second hearing together with an admission of perjury, was as a topless dancer at the Fourth Quarter Lounge in Grand Junction. She received $5 per hour for working as a dancer.

The evidence further shows that the mother intended to return immediately to Colorado with the child so she could receive $400 per month in welfare payments for having the child with her. The father stated that if the mother took the child, he would never see the child again. That testimony was not refuted. Consequently, under all of the circumstances presented, we conclude that the evidence is sufficient to show that there was a serious immediate question concerning the welfare of the child; therefore, Henderson's contentions in support of her petition for writ of mandamus are overruled and the writ is denied.